**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | LLOYD | | GRIFFIN JR |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) First Name | | Middle Name | Last Name |

United States Bankruptcy Court for the: Northern District of Illinois

Case number 20-11095
(if known)

*[Stamp: BANK of the WEST BANKRUPTCY DEPT. JUN 09 2020 RECEIVED]*

## Official Form 427
## Cover Sheet for Reaffirmation Agreement          12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**  BANK OF THE WEST
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed   $ 28,306.01
To be paid under the reaffirmation agreement   $ 27,815.84
$ 505.73 per month for 66 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed   6.80 %
Under the reaffirmation agreement   6.80 % ☑ Fixed rate
☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes. Describe the collateral. 2018 FORD EDGE
Current market value   $ 27,815.84

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J

6a. Combined monthly income from line 12 of Schedule I   $ 2,802.00

6b. Monthly expenses from line 22c of Schedule J   $ 2,802.00

6c. Monthly payments on all reaffirmed debts not listed on Schedule J   − $ 0

6d. Scheduled net monthly income   $ 0
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement

6e. Monthly income from all sources after payroll deductions   $ 2,802.00

6f. Monthly expenses   − $ 2,802.00

6g. Monthly payments on all reaffirmed debts not included in monthly expenses   − $ 0

6h. Present net monthly income   $ 0
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Debtor 1  **LLOYD C GRIFFIN JR**
          First Name  Middle Name  Last Name

Case number (if known) 20-11095

| | | |
|---|---|---|
| 7. Are the income amounts on lines 6a and 6e different? | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 8. Are the expense amounts on lines 6b and 6f different? | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☒ No<br>☐ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |

10. **Debtor's certification about lines 7-9**

    I certify that each explanation on lines 7-9 is true and correct.

    If any answer on lines 7-9 is *Yes*, the debtor must sign here.

    If all the answers on lines 7-9 are *No*, go to line 11.

    _____    _____
    Signature of Debtor 1      Signature of Debtor 2 (Spouse Only in a Joint Case)

11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?**

    ☐ No
    ☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
      ☐ No
      ☒ Yes

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

_[signature: Alan Dugan]_____    Date _____
Signature                                         MM / DD / YYYY

**ALAN DUGAN**
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

B2400A/B ALT (Form 2400A/B ALT) (12/15)

☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## NORTHERN District of ILLINOIS

In re LLOYD GRIFFIN,                    Case No. 20-11095
        Debtor                          Chapter 7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)

☒ Part B: Reaffirmation Agreement

☒ Part C: Certification by Debtor's Attorney

☒ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☒ Part E: Motion for Court Approval

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. Note also: If you complete Part E, you must prepare and file Form 2400C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:** BANK OF THE WEST

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

**1.    DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm:    $ 27,815.84

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

B2400A/B ALT (Form 2400A/B ALT) (12/15)             2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____ %.

--- *And/Or* ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 6.80 %.

--- And/Or ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                          3

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

  c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

  The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

  d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

Item or Type of Item    Original Purchase Price or Original Amount of Loan
2018 FORD EDGE     $33,319.15

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $_____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— *Or* —

Your payment schedule will be: __66__ (number) payments in the amount of $__505.73__ each, payable (monthly, annually, weekly, etc.) on the __18TH__ (day) of each __MONTH__ ( week, month, etc.), unless altered later by mutual agreement in writing.

— *Or* —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

  **2. INSTRUCTIONS AND NOTICE TO DEBTOR**

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                4

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                    5

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

B2400A/B ALT (Form 2400A/B ALT) (12/15)             6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
   RETAIL INSTALLMENT CONTRACT SIMPLE FINANCE CHARGE

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement: NONE

SIGNATURE(S):

Borrower:

LLOYD C GRIFFIN JR
(Print Name)

X _____
(Signature)
Date: 6/2/20

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)
Date: _____

Accepted by creditor:

BANK OF THE WEST
(Printed Name of Creditor)

2527 CAMINO RAMON SAN RAMON CA 94583
(Address of Creditor)

_____
(Signature)

ALAN DUGAN/ BK SPECIALIST
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:

_____

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                          7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: __DAVID M SIEGEL__

Signature of Debtor's Attorney: _____

Date: __6/2/20__

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                  8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ 2,802.00, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ 2,296.27, leaving $ 505.73 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____
_____

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: X _____
          (Debtor)

_____
(Joint Debtor, if any)
Date:    6/2/20

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
          (Debtor)

_____
(Joint Debtor, if any)
Date:    _____

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                    9

**PART E: MOTION FOR COURT APPROVAL**
*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

## MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes*):

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed _____
(Debtor)

_____
(Joint Debtor, if any)

Date: 6/2/20

**LAW 553-IL-eps-14 7/17**
**ORIGINAL**
DEAL# 155439
CUST#*9669616

RETAIL INSTALLMENT CONTRACT
SIMPLE FINANCE CHARGE

Dealer Number _____    Contract Number 26791

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| LLOYD C GRIFFIN JR<br>3440 S COTTAGE GROVE AVE APT 608<br>CHICAGO, IL 60616-5100<br>County: | N/A | JOE RIZZA FORD OF ORLAND PARK, INC<br>8100 WEST 159TH STREET<br>ORLAND PARK, IL 60462 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit for the deferred payment price under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. If any amount remains unpaid fifteen days after the final payment due date, we will assess finance charges on the unpaid balance at the Annual Percentage Rate shown in the Truth-in-Lending Disclosures. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1813.71 is |
|---|---|---|---|---|---|
| NEW | 2018 | FORD EDGE | 2444 | 2FMPK3G98JBC22408 | $ 43789.30 |

Primary Use For Which Purchased
☐ Personal, family, or household unless otherwise indicated below
☐ business    ☐ agricultural    ☒ N/A

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.80 % | $ 8656.44 | $ 33319.15 | $ 41975.59 |

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 83 | 505.73 | Monthly beginning 01/18/2019 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $ 10 or 5% of the part of the payment that is late, whichever is greater.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business use.
If a payment is not received in full within N/A days after it is due, you will pay a late charge of $ N/A or N/A % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-in-Lending Disclosures" still applies.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**FOR USED VEHICLES ONLY**

Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.

**ATTENTION CONSUMER:** SIGN HERE ONLY IF THE SELLER HAS TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM OR PROBLEMS AND YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:
ATENCION CONSUMIDOR: FIRME AQUI SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHICULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y USTED ESTA DE ACUERDO EN COMPRAR EL VEHICULO SEGUN ESTOS TERMINOS:

1. N/A    2. N/A    3. N/A

X _____    X _____
Buyer Signs    12/04/2018 (Date)    Co-Buyer Signs    N/A (Date)

**NOTICE OF POSSIBLE REFUND** OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM: (1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

Buyer Initials X _LA_    Co-Buyer Initials X N/A    59526*1*NRF-FI    12/04/2018 05:51 PM    LAW 553-IL-eps-14 7/17 v1    Page 1 of 4

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ 1665.42 sales tax) .......... $ 34019.42 (1)
2. Total Downpayment =
   Trade-In 2017 FORD ESCAPE
            (Year)  (Make) (Model)
   Gross Trade-In Allowance          $ 15000.00
   Less Pay Off Made By Seller       $ 25436.29
   Equals Net Trade In               $ -10436.29
   + Cash                            $ 5000.00
   + Other REBATE                    $ 7250.00
   (If total downpayment is negative, enter "0" and see 4K below) ...... $ 1813.71 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ............ $ 32205.71 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A Cost of Optional Credit Insurance Paid to Insurance
     Company or Companies.
     Life                          $ N/A Term N/A
     Disability                    $ N/A Term N/A
   B Vendor's Single Interest Insurance Paid to Insurance Company    N/A
   C Other Optional Insurance Paid to Insurance Company or Companies N/A
   D Optional Gap Contract                                           795.00
   E Official Fees Paid to Government Agencies
     to N/A         for N/A                          N/A
     to N/A         for N/A                          N/A
     to N/A         for N/A                          N/A
   F Government Taxes Not Included in Cash Price                     N/A
   G Government License and/or Registration Fees
       LIC/TITLE                                                     22.50
   H Optional ERT Fee Paid To CVR/DLR                                120.00
   I Government Certificate of Title Fees                            N/A
   J To Seller for Documentary Fee                                   175.94
     DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.
   K Other Charges (Seller must identify who is paid and describe purpose)
     to N/A        for Prior Credit or Lease Balance      N/A
     to N/A        for N/A                                N/A
     to N/A        for N/A                                N/A
     to N/A        for N/A                                N/A
     to N/A        for N/A                                N/A
     to N/A        for N/A                                N/A
     to N/A        for N/A                                N/A
   Total Other Charges and Amounts Paid to Others on Your Behalf ...... $ 1113.44 (4)
5. Amount Financed (3 + 4) ............................. $ 33319.15 (5)

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____, _____ Year. _____ SELLER'S INITIALS

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 83 Mos.   NSDG
                 Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X /s/

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this Insurance is $ N/A** and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

---

INSURANCE. YOU MAY BUY THE PHYSICAL DAMAGE INSURANCE THIS CONTRACT REQUIRES FROM ANYONE YOU CHOOSE WHO IS ACCEPTABLE TO US.

You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
Home Office Address N/A

CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N/A Type of Insurance N/A Term
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

☐ N/A Type of Insurance N/A Term
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the optional credit insurance and the other insurance checked above.

X N/A                            N/A
  Buyer Signature                Date

X N/A                            N/A
  Co-Buyer Signature             Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.

You understand that Seller or its affiliates, or any holder of the contract or its affiliates, may receive consideration or something of value in connection with the sale of insurance purchased with this retail installment contract.

Returned Check Charge: If any check or other draft you give us is dishonored, you will pay us a charge of $25 or, at our option, an amount in excess of $25 for our costs and expenses, including reasonable attorney's fees incurred in collection of the check or draft. We will make written demand on you if we elect to pursue a nonlitigated collection action against you for our costs and expenses in excess of $25.

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

Buyer Initials X /s/   Co-Buyer Initials X N/A

ORIGINAL

595261*1*NRF-FI                    12/04/2018   05:51 PM
                                   LAW 553-IL-eps-14 7/17 v1   Page 2 of 4

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**

   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Fifteen days after the final installment is due as originally scheduled or deferred, we will compute and charge interest on any balance remaining unpaid, including any unpaid default charges or deferment charges, at the Annual Percentage Rate shown on page 1 of this contract.

   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**

   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

   **Unless you provide us with evidence of the insurance coverage required by this contract, we may buy insurance at your expense to protect our interests in the vehicle. This insurance may, but need not, protect your interests. The coverage that we buy may not pay any claim that you make or any claim that is made against you in connection with the vehicle. You may later cancel any insurance we buy, but only after providing us with evidence that you have obtained insurance as required by this contract. If we buy insurance for the vehicle, you will be responsible for the costs of that insurance, including finance charges and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. We may add the costs of the insurance to your total outstanding balance or obligation.** The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

   If we buy insurance, the charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the rate we are charging when we buy the insurance.

   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right the law gives you to reinstate this contract. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay our reasonable attorney's fee as the law allows. If a judgment is entered against you, you will pay any court costs the court awards us.

   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.

   f. **We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a "total" loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.



ORIGINAL

59526*1*NRF-FI

LAW 553-IL-eps-14 7/17 v1    12/04/2018   05:51 PM   Page 3 of 4

Buyer Initials X _LA_   Co-Buyer Initials X _N/A_

4. **WARRANTIES SELLER DISCLAIMS**
If the vehicle you purchased is a new vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.
If the vehicle you purchased is a used vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no express warranties on the vehicle, and there will be no implied warranties of fitness for a particular purpose. The vehicle is subject to an implied warranty of merchantability, but only to the extent required by Illinois law. The implied warranty of merchantability expires at midnight of the 15th calendar day after delivery of the vehicle or until the vehicle is driven 500 miles after delivery, whichever is earlier. This implied warranty of merchantability does not extend to damage that occurs after the sale that results from: (1) off-road use; (2) racing; (3) towing; (4) abuse; (5) misuse; (6) neglect; (7) failure to perform regular maintenance; and (8) failure to maintain adequate oil, coolant, and other required fluids or lubricants.
The above provisions do not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **APPLICABLE LAW**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**RETAIL INSTALLMENT CONTRACT**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X ___   Date 12/04/2018   Co-Buyer Signs X N/A   Date N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others. By signing above, the co-buyer confirms that the co-buyer actually receive possession of the vehicle or will use it, or that the co-buyer is a parent or spouse of the buyer, or will be listed as an owner on the vehicle's title.
See the rest of this contract for other important agreements.

**Notice to the buyer.**
1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X ___  Date 12/04/2018   Co-Buyer Signs X N/A   Date N/A
Co-Buyer A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the buyer, or (3) will be listed as an owner of the vehicle's title. By signing above, the co-buyer confirms that the co-buyer actually receive possession of the vehicle or will use it, or that the co-buyer is a parent or spouse of the buyer, or will be listed as an owner on the vehicle's title.

Guarantor A guarantor is a person who may be responsible for paying the entire debt if we cannot collect the amount owed from the buyer and any co-buyer.
Guarantor Signs X ___   Date 12/04/2018   Address N/A
I hereby guarantee the collection of the described amount (on page 1 of this contract) upon failure of the seller named herein to collect said amount from the buyer named herein. I also consent to the Creditor having a security interest in the vehicle.

Other Owners An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this Contract.
Other Owner Signs X ___   Date 12/04/2018   Address N/A

Seller signs JOE RIZZA FORD OF ORLAND PARK, INC   By ___   Title FI MANAGER

**NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION**

Seller assigns its interest in this contract to Bank of The West (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse  ☒ Assigned without recourse  ☐ Assigned with limited recourse

Seller JOE RIZZA FORD OF ORLAND PARK, INC   By ___   Title FI MANAGER

LAW FORM NO. 553-IL-eps-14 (REV. 7/17)
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
5926*1*NRF-FI   12/04/2018 05:51 PM   LAW 553-IL-eps-14 7/17 v1   Page 4 of 4


ORIGINAL

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO |
|---|---|---|---|---|---|
| 2FMPK3G98JBC22408 | 2018 | FORD | EDGE | UTILITY | 18354693281 |
| 2FMPK3G98JBC22408 | | | | | |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 12/20/18 | 2444 | | | 12/04/18 | ORIGINAL |
| | 2444 | | | NEW | |

MAILING ADDRESS

LEGEND(S)

ACTUAL MILEAGE

BANK OF THE WEST
PO BOX 2497
OMAHA NE 68103-2497

OWNER(S) NAME AND ADDRESS
LLOYD C GRIFFIN
3440 S COTTAGE GROVE AVE 608
CHICAGO IL 60616

FIRST LIENHOLDER NAME AND ADDRESS
BANK OF THE WEST
PO BOX 2497
OMAHA NE 68103-2497

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party _____ Address _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application.*

ODOMETER READING [NO TENTHS]
Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller
Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
R0952097

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

---

MUST BE COMPLETED BY SELLER

**DO NOT DETACH UNTIL SOLD**
**NOTICE OF SALE**

SEE INSTRUCTIONS ON REVERSE

FORD _____ 2018 _____ 2FMPK3G98JBC22408 _____
Vehicle Make ___ Vehicle Year ___ Vehicle Identification Number (VIN) ___ Date ___

Name of Seller (Current Registered Owner) _____ Name of Buyer _____

Complete Address of Seller _____ Complete Address of Buyer _____

City ___ State ___ ZIP ___ City ___ State ___ ZIP ___

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States

Seller's Signature _____ Printed Name of Seller _____ Date _____